IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VIKING CONSTRUCTION GROUP, LLC,** | * CASE NO.: 17-12838 |
| **EDUCATIONAL ELECTRONICS** | * |
| **CORPORATION,** | * |
| **NOVO COMMUNICATIONS, LLC,** | * |
| **HAL COLLUMS CONSTRUCTION, LLC,** | * |
| **PERLE CONSTRUCTION GROUP, LLC, and** | * JUDGE |
| **TOM BRANIGHAN, INC.** | * |
| | * |
|    **PLAINTIFFS,** | * |
| | * |
| **VERSUS** | * MAGISTRATE JUDGE |
| | * |
| **SATTERFIELD AND PONTIKES** | * |
| **CONSTRUCTION, INC.,** | * |
| **SATTERFIELD AND PONTIKES** | * |
| **CONSTRUCTION GROUP, LLC, and** | * |
| **C.D.W. SERVICES, LLC** | * |
| | * |
|    **DEFENDANT.** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**NOTICE OF REMOVAL**

NOW INTO COURT, through undersigned counsel, comes Satterfield and Pontikes Construction, Inc. ("S&P, Inc."), and, with a full reservation of all rights and defenses, files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

    **I.**    **The State Court Action**

On October 27, 2017, plaintiffs, Viking Construction Group, LLC, Educational Electronics Corporation, Novo Communications, LLC, Hal Collums Construction, LLC, Perle Construction Group, LLC, and Tom Branighan, Inc. ("Plaintiffs"), filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana, bearing Docket Number 2017-10393 (the "State Court Action") against Satterfield and Pontikes Construction, Inc., Satterfield and

Pontikes Construction Group, LLC ("S&P, LLC"), and C.D.W. Services, LLC ("CDW") (collectively "Defendants"). Plaintiffs' Petition for Damages Pursuant to the Louisiana Racketeering Act (the "Petition") is the live pleading in this case.[1]

Plaintiffs assert claims for treble damages, attorneys' fees, and costs against Defendants for alleged violations of the Louisiana Racketeering Act, La. Rev. Stat. § 15:1351, *et seq*. ("Louisiana RICO"). Specifically, Plaintiffs contend that S&P, Inc. and S&P, LLC formed an enterprise for the purpose of securing federal government contracts by "submitting bids that members of the Enterprise knew would be low enough to guarantee awarding of the contract but which they also knew would be insufficient to adequately and timely complete the work through subcontractors."[2] Plaintiffs further contend that CDW "in conspiracy with S&P, filed a verified petition for summary proceeding in Civil District Court in the Parish of Orleans containing materially false statements in the public records of the Court in order to remove the lien lawfully filed by Perle"[3] for the purpose of taking the "goods and services belonging to Perle with the intent to permanently deprive Perle of any compensation for those goods and services."[4]

II. **Timeliness of Removal**

On November 7, 2017, a copy of the Petition, together with the Summons, was served on the registered agent for S&P, Inc.[5] As S&P, LLC is no longer in existence, it has not been served. On November 3, 2017, CDW was served with the Petition. Accordingly, this Notice of

---

[1] A copy of the Petition and Summons is attached hereto in accordance with 28 U.S.C. § 1446(a) as Exhibit "1."

[2] *Id.* at ¶ 11.

[3] *Id.* at ¶ 34.

[4] *Id.* at ¶ 37.

[5] *Id.*

2

Removal to the United States District Court is filed timely, it being filed no more than thirty (30) days after service of the Petition on S&P, Inc., the properly joined defendant, in accordance with 28 U.S.C. §§ 1441 and 1446(b)(2)(B)-(C).

As more fully set forth below, neither S&P, LLC nor CDW is properly joined and, as such, their consent to removal is not necessary.[6] However, S&P, Inc., as the sole member of S&P, LLC, consents to the requested removal on behalf of S&P, LLC, and CDW also has no opposition to removal.

### III. The Amount in Controversy Exceeds $75,000.

In accordance with Louisiana Code of Civil Procedure Article 893(A)(1), the Petition does not allege the dollar amount that the Plaintiffs are seeking. Nevertheless, it is apparent based in the allegations set forth in the Petition that the amount in controversy exceeds $75,000.00. Plaintiffs, a group of subcontractors, generally allege that Defendants, the general contractors, conspired to deprive them of funds owed for construction work performed on various projects, with at least one Plaintiff alleging that Defendant S&P, Inc. "kept over half of what was owed to [Plaintiff, HCC]" where the total price of the entire scope of work for HCC was alleged to have been $2,598,805.[7] These allegations alone are sufficient to demonstrate that the amount in controversy exceeds the $75,000 threshold.

In addition, Plaintiffs failed to include with their Petition a stipulation or allegation under Louisiana Code of Civil Procedure Article 893 stating that the claim is less than the requisite federal jurisdictional amount.[8] Moreover, the Petition seeks treble damages, attorneys' fees,

---

[6] *Getty Oil Corp., a Div. of Texaco v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.9 (5th Cir. 1988) (noting that 28 U.S.C. § 1446(a) has been interpreted to require that all then served **properly joined defendants** join in the removal petition)(emphasis added).

[7] *See* Ex. "1," Petition, at ¶¶ 49–56.

[8] LA. CODE CIV. P. art. 893(A)(1); *see Courville v. State Farm Mut. Auto. Ins. Co.*, No. 6:15-CV-01221,

3

expenses, and costs under Louisiana RICO.  When the treble damages sought by Plaintiffs are combined with attorneys' fees, as permitted by the Fifth Circuit, the amount in controversy exceeds the $75,000 threshold.  *See Grant v. Chevron Phillips Chevron Phillips Chemical Co., L.P.*, 309 F.3d 864, 869 (5th Cir. 2002) ("the federal district court's jurisdictional amount calculus must include attorney's fees when an applicable Louisiana statute allows the award of such fees.").  Because Louisiana RICO provides for recovery of attorney's fees, such fees must be included in assessment of the amount in controversy in this case.  *See* LA. REV. STAT. § 15:1356(E).  Thus, the amount in controversy exceeds $75,000.  *See Hellmers v. Countrywide Home Loans, Inc.*, No. 07-7703, 2008 WL 191306, at * 2 (E.D. La. 1/22/08) (internal citations omitted) ("Considering the possibility that Plaintiffs may recover attorney's fees in addition to any award of damages, the Court finds that the amount in controversy in any one plaintiff's claims likely exceeds $75,000.").

### IV.   Venue

Venue for removal is proper in this district and division under 28 U.S.C. § 1441(a) because this district and division embrace the Civil District Court for the Parish of Orleans, State of Louisiana, the forum in which the removed action was pending.

### V.   Removal is Proper Based on Diversity of Citizenship.

This Court has original jurisdiction over this action, and this case may be properly removed to this Court pursuant to 28 U.S.C. § 1441(a), in that the captioned matter is a "civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and there is complete diversity between Plaintiffs and the only properly joined

---

2015 WL 4730124, at *1 (W.D. La. Aug. 10, 2015) ("[A] plaintiff's failure to include such an allegation is a factor to be considered in evaluating the amount in controversy….") (citation omitted).

defendant, S&P, Inc.

>    A.   *Complete Diversity Exists Between Plaintiffs and S&P, Inc., The Properly Joined Defendant.*

Plaintiffs allege in the Petition they are citizens of the state of Louisiana.[9] Defendant, S&P, Inc., is a corporation organized and existing under the laws of the State of Texas with its principal offices in the County of Harris, State of Texas. Thus, there is complete diversity of citizenship between Plaintiffs and the properly joined Defendant, S&P, Inc.

>    B.   *Complete Diversity Exists Between S&P, LLC and Plaintiffs*.

On October 30, 2012, the Louisiana Secretary of State records reflect that S&P, LLC merged into S&P, Inc. and list S&P, LLC as a "non-survivor" of this merger.[10] For this reason, S&P, LLC cannot be considered a real party in interest to this litigation.[11]

Moreover, Plaintiffs allege in the Petition that S&P, Inc., a "corporation organized and existing under the laws of the State of Texas with its principal offices in the County of Harris, State of Texas," is the sole owner/member of Satterfield and Pontikas Construction, LLC.[12] Unlike the citizenship of a corporation, the citizenship of a limited liability corporation for purposes of diversity is not determined by the state of organization or the principal place of business, but rather by the citizenship of its members. *Harvey v. Grey Wolf Drilling Co.,* 542

---

[9] *See* Ex. "1," Petition, at ¶ 1(a)-(f).

[10] *See* Certified Copy of Plan of Short Form Merger of S&P, LLC with S&P, Inc., on file with the Louisiana Secretary of State, attached hereto as Exhibit "2."

[11] *See* LA. REV. STAT. § 12:1361(A)(2) (providing that upon "[c]onsummation of a merger or consolidation . . . [t]he separate existence of constituent entity, except the surviving entity or new entity, shall cease."); *see also Rosenbrock v. Deutsche Lufthansa, A.G., Inc*., No. 6:16-CV-0003, 2016 WL 2756589, at *7 (S.D. Tex. May 9, 2016) (In general, where there has been a merger of corporations, "the citizenship of the surviving corporation is controlling" for diversity purposes." (citations omitted)); *Perkins v. Entergy Corp*., 2009-0632 (La. App. 1 Cir. 6/10/10)("Generally speaking, upon a merger of corporations, the separate existences of the constituent or merging corporations cease to exist, except that of the surviving business." (citations omitted)).

[12] *See* Ex. "1," at ¶ 2(a).

5

F.3d 1077, 1080 (5th Cir. 2008); *see Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 847 F.3d 302, 306–07 (5th Cir. 2017). Since the sole member of S&P, LLC is a Texas corporation, S&P, LLC is a Texas citizen and is not now, and was not at the time of the filing of the Petition, a citizen of the State of Louisiana. Thus, there is complete diversity of citizenship between Plaintiffs and S&P, LLC.

    C.    *CDW Services, LLC Has Been Improperly Joined; Thus, Its Citizenship Should Be Disregarded.*

Under Section 1441(b), while complete diversity of citizenship must exist between all plaintiffs and all defendants to establish federal subject matter jurisdiction, only the citizenship of *properly* joined parties can establish federal subject matter jurisdiction.[13] The doctrine of improper joinder "prevents defeat of federal removal jurisdiction premised on diversity jurisdiction by an improperly joined, non-diverse defendant."[14] Citizenship of an improperly joined defendant is disregarded entirely in determining whether complete diversity exists.[15] "Normally, a court reviewing allegations of fraudulent joinder should refrain from conducting an evidentiary hearing but may utilize a summary judgment-like procedure."[16] A defendant may submit and the court may consider affidavits and deposition transcripts in support of the defendant's removal petition.[17]

Improper joinder is established when the removing party meets the burden of showing either (1) there was actual fraud in pleading the jurisdictional facts; or (2) the plaintiff is unable

---

[13] *See* 28 U.S.C. § 1441(b); *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

[14] *Borden v. Allstate Inc. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).

[15] *Smallwood*, 385 F.3d at 572.

[16] *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000) (citing *Burchett v. Cargill*, 48 F.3d 173, 176 (5th Cir. 1995)).

[17] *Connerly v. Gethers*, 2009 WL 1605140, at *2 (E.D. La. June 5, 2009) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)).

to establish a cause of action against the non-diverse defendant under state law.[18] To establish the second ground for improper joinder, the removing party bears the burden of proving that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[19] "This possibility [of recovery], however, must be reasonable, not merely theoretical."[20] "[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery."[21]

The Fifth Circuit recently held that federal courts should use the federal court pleading standard when analyzing an improper joinder claim to determine if the plaintiff has stated a claim against a non-diverse defendant.[22] A plaintiff fails to state a claim upon which relief may be granted where a plaintiff's factual allegations do not show a right to relief under state law.[23] "[A] Petition must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[24]

To avoid a dismissal for failure to state a claim, a plaintiff must plead *specific facts*, not mere conclusory allegations.[25] The "[f]actual allegations must be enough to raise a right to relief

---

[18] *Bradley v. Wal-Mart Stores, Inc.*, 2016 WL 3180644, at *2 (E.D. La. June 8, 2016) (citing *Smallwood*, 385 F.3d at 573).

[19] *Smallwood*, 385 F.3d at 572.

[20] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (emphasis added).

[21] *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999).

[22] *Int'l Energy Ventures Management, L.L.C. v. United Energy Group, Limited*, 818 F.3d 193, 200 (5th Cir. 2016); *see also Thomas v. Exxon Mobil Corp.*, 2017 WL 1477159, at *3 (E.D. La. Apr. 25, 2017).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

[24] *Id.*

[25] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1997)).

above the speculative level."[26] The Court must not accept as true conclusory allegations or unwarranted deductions of fact.[27] The United States Supreme Court has made clear that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action *will not do*."[28] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice," and something more than "unadorned 'the-defendant-unlawfully-harmed-me accusation' is needed."[29]

      1. <u>The Elements of a Louisiana RICO Claim</u>

The Louisiana Racketeering Act ("Louisiana RICO") is found in LA. REV. STAT. §. 15:1351, *et seq.,* with a civil remedy provided in LA. REV. STAT. § 15:1356(E). Section 1353 sets forth the prohibited activities:

> A. It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise.
>
> B. It is unlawful for any person, through a pattern of racketeering activity, knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property.
>
> C. It is unlawful for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.
>
> D. It is unlawful for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of this Section.

---

[26] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[27] *Collins*, 224 F.3d at 498.

[28] *Twombly*, 550 U.S. at 555 (emphasis added).

[29] *Iqbal*, 556 U.S. at 667.

To state a valid cause of action under the Louisiana RICO statute (and the federal statute on which it is based), a party must allege that (1) a person or persons (within the meaning of RICO) (2) engaged in a pattern of racketeering activity (3) that was connected to the acquisition, establishment, conduct or control of an enterprise.  *See* LA. REV. STAT. §15:1353 and 1356; *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 439 (5th Cir. 2000); *Brown v. Protective Life Ins. Co.*, 353 F.3d 405 407 (5th Cir. 2003).

To be a RICO "person" as required under LA. REV. STAT. §15:1353, the individual or entity must be "capable of holding a legal or beneficial interest in property."  LA. REV. STAT. § 15:1353; *see also* 18 U.S.C. § 1961(3) (broadly defining a RICO person as "an individual or entity capable of holding a legal or beneficial interest in property.").  As held by the Fifth Circuit: "The RICO person must be one that either poses or has posed a continuous threat of engaging in acts of racketeering…." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.3d 241, 242 (5th Cir. 1988).  Generally, the "continuous threat" requirement is satisfied by showing the "pattern of racketeering."

To proceed with any claim under Louisiana RICO, the Petition must sufficiently allege a "pattern of racketeering activity," defined by Section 15:1352(C) to mean:

> [E]ngaging **in at least two incidents of racketeering activity** that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided...**that the last of such incidents occurs within five years after a prior incident of racketeering activity**.

LA. REV. STAT. § 15:1352(C) (emphasis and underscoring added).  "Racketeering activity" is defined in Section 1961(1) in terms of a list of state and federal crimes, which are described as "predicate acts."  *See* 18 U.S.C. § 1961(1).  The predicate acts that may form the basis for such "racketeering activity" are specifically enumerated in the Louisiana RICO statute.  *See* LA. REV. STAT. § 15:1352(A)(1)–(65).

> 2. There Is No Reasonable Basis for the Court to Predict that Plaintiffs Might Be Able to Recover Against CDW under Louisiana RICO; Therefore, CDW Was Improperly Joined.

Plaintiffs allege that defendant, CDW, a Louisiana limited liability company, is "engaged in the business of, *inter alia*, supplying construction services to various entities funded in part by the United States."[30]  In a transparent attempt to defeat federal diversity jurisdiction, Plaintiffs have included CDW as a defendant in this litigation based on CDW filing a pleading in an unrelated lawsuit with which they disagree.  Plaintiffs attempt to make this lone, innocuous act the predicate for a Louisiana RICO claim.  Specifically, Plaintiffs allege that CDW, "in conspiracy with S&P, filed a verified petition containing materially false statements in the public records of the Court in order to remove the lien lawfully filed by Perle," one of the Plaintiffs.[31]  Plaintiffs also allege that S&P's project manager testified at the hearing "in support of CDW."[32]  The alleged purpose of these actions was to allow "CDW, Christopher D. Walker and S&P [to take] the goods and services belonging to Perle with the intent to permanently deprive Perle of

---

[30] Ex. "1," Petition, ¶ 7.

[31] *Id.* at ¶ 34.  Notably, no other Plaintiff states such a claim because the legal proceeding in question did not involve any of the other Plaintiffs.  Viking Construction Group, LLC, Educational Electronics Corporation, Novo Communications, LLC, Hal Collums Construction, LLC, and Tom Branighan, Inc. cannot vicariously suffer this alleged harm, and therefore have no Louisiana RICO claim against CDW at all.

[32] *Id.* at ¶ 36.

any compensation for those goods and services."[33] The period in which this conduct is alleged to have occurred is March 2, 2011 – over six years ago. This single filing is the totality of the "predicate acts" alleged to have been committed by CDW, and it is not enough as a matter of law to state a claim under Louisiana RICO.

Simply, the Petition is devoid of any facts that would provide a reasonable basis for the Court to predict that Plaintiffs could recover against CDW for damages arising out of a violation of Louisiana RICO. As such, CDW was improperly joined and its citizenship should be disregarded.

> a. Plaintiffs Fail to Allege CDW Committed
> A Predicate Act under Louisiana RICO.

In their Petition, Plaintiffs allege that in March of 2011 CDW "in conspiracy with S&P" filed a "verified petition for summary proceeding in Civil District Court in the Parish of Orleans containing materially false statements" to remove a lien lawfully filed by Plaintiff, Perle.[34] Plaintiffs allege that "[b]y means of fraudulent conduct . . . including filing a false public record into the records for the Civil District Court for the Parish of Orleans" CDW and its principal along with S&P "took the goods and services belonging to Perle."[35]

Assuming Plaintiffs intended to allege that CDW committed the predicate act of "filing or maintaining false public records" under LA. REV. STAT. § 14:133, the Petition's allegations fail. Louisiana Revised Statutes section 14:133 makes a crime the following conduct:

> A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by

---

[33] *Id*. at ¶ 37.

[34] *Id*. at ¶ 34.

[35] *Id*. at ¶ 37.

>law, regulation, or rule, with knowledge of its falsity, of any of the following:
>
>(1) Any forged document.
>
>(2) Any wrongfully altered document.
>
>(3) Any document containing a false statement or false representation of a material fact.

LA. REV. STAT. § 14:133(A)(1)–(3).

Plaintiffs' Petition contains no facts demonstrating that the allegations made in CDW's petition were, in fact, false. To the contrary, the facts alleged in the *verified* petition filed with the Civil District Court are true. Louisiana courts have not found that true allegations contained in a *verified* petition or pleading filed with a court could form the basis for the crime of "filing a false public record."[36] Because the statements made in the CDW petition are verified and presumed *true*, they cannot form the basis for the predicate act of filing a false public record. And Plaintiffs' allegations that this conduct forms part of some fraudulent activity to deprive Perle of "goods and services" therefore also fails.

Moreover, this alleged predicate act – the filing of CDW's petition in March of 2011 – occurred well beyond the five year prescriptive period in which Perle could have filed suit under the Louisiana RICO statute. *See* LA. REV. STAT. § 15:1356(H). Plaintiff Perle had actual knowledge of CDW's allegations in the 2011 suit,[37] as demonstrated by the reconventional demand Perle filed in that suit in May of 2011, which contains allegations nearly identical to

---

[36] *See State v. Salat*, 95-0072 (La. App. 1 Cir. 4/4/96), 672 So. 2d 333, 337, *writ denied*, 96-1116 (La. 10/4/96), 679 So. 2d 1378 (finding that indictment stated essential facts constituting offense of filing false public record where the defendant falsified information relevant to filing and recordation of the petition was false – not the information the petition itself contained). Even if Plaintiffs' allegations were taken as true, Plaintiffs have at best alleged that there was a fundamental disagreement regarding the legal implications of the parties' relationship. That is not a crime.

[37] *Ames v. Ohle*, 2011-1540 (La. App. 4 Cir. 5/23/12), 97 So. 3d 386, 394 ("Constructive knowledge is sufficient to commence the running of prescription." (citation omitted)).

those it presented in this case.[38]  Despite having such knowledge, Perle failed to file any claim under the Louisiana RICO statute for over five years.  Accordingly, Perle's claim against CDW is prescribed on the face of the Petition.

> b.      Plaintiffs Fail to Allege CDW Engaged in "Pattern of Racketeering Activity."

Even assuming that making allegations in litigation could be considered a predicate act (and it could not), there must be more than one predicate act alleged to have occurred to find a Louisiana RICO violation.[39]  There is not.  To allege a pattern of racketeering, Plaintiffs are required to plead that the underlying predicate acts are related and have continuity.  *See In re Burzynski*, 989 F.3d 733, 743 (5th Cir. 1993).  Plaintiffs have made no such allegation.

Plaintiffs contend that the predicate acts committed by CDW occurred in the context of litigation that CDW instituted in 2011.[40]  Not only do Plaintiffs fail to establish that the filing in question was false, much less fraudulent, the alleged conduct itself lacks the requirement of continuity, an essential element of a RICO claim.  *See In re Burzynski*, 989 F.3d at 743.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement as Congress was concerned with RICO in long-term criminal conduct."  *H.J., Inc. v. Northwestern Bell. Tel. Co.*, 492 U.S. 229, 241-42 (1989).  Proof of at

---

[38] *See* Petition for Reconventional Demand filed 05/12/2011, *C.D.W. Services, LLC v. Perle Construction Group, LLC, et al.*, Civ. No. 2011-03066, Civil District Court for the Parish of Orleans.  This Court may take judicial notice of the Petition for Reconventional Demand as it is a publicly-available document.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (noting that the district court took appropriate judicial notice of publicly available document in deciding a Rule 12(b)(6) motion).

[39] Again, Section 15:1352(C) defines a "pattern of racketeering activity" as:

> [E]ngaging **in at least two incidents of racketeering activity** that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided...**that the last of such incidents occurs within five years after a prior incident of racketeering activity**.

[40] Ex. "1," Petition, at ¶¶ 34-35, & 37.

least two predicate acts is necessary, but not sufficient, to find a RICO violation; to establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous." *Id.* at 238.  Indeed, "RICO is meant to punish those who harm others in a continuous systematic way, not those who harm others only once by a series of actions." *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 642 F. Supp. 781, 809 (E.D. La. 1986).   Here, CDW filed its petition in March of 2011 against Perle.  Any conduct occurring in the context of that litigation is isolated and would not create a threat of future criminal conduct.  *See In re Burzynski*, 989 F.3d 733, 743 (5th Cir. 1993) (finding that where the alleged predicate acts occurred in the defense of a lawsuit the conduct did not constitute or threaten long-term criminal activity).

## VI.  Additional Requirements

S&P, Inc. has provided notice to Plaintiffs through delivery of a copy of this Notice and the state court Notice of Filing of Notice of Removal to Plaintiffs' counsel of record, and have also provided notice to the Clerk of Court for the Civil District Court for the Parish of Orleans, State of Louisiana through the filing of this Notice and the Notice of Filing of Notice of Removal into the record of the state court action.

Copies of all pleadings, process, orders, request for trial by jury, and other filings in the state-court suit are attached to this notice as required by 28 U.S.C. § 1446(a).

WHEREFORE, Defendant, Satterfield and Pontikes Construction, Inc., prays that this matter be removed to the United States District Court for the Eastern District of Louisiana, for further proceedings and disposition.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

BY: _____*s/Erin E. Pelleteri*_____
MATTHEW A. WOOLF, TA (#27146)
MARK W. FRILOT (#27470)
ERIN E. PELLETERI (#30666)
MEGHAN E. CARTER (#35074)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: 504-566-5200
Facsimile: 504-636-4000

**ATTORNEYS FOR DEFENDANT, SATTERFIELD AND PONTIKES CONSTRUCTION, INC.**

15

## CERTIFICATE AND NOTICE OF FILING

I certify that on November 20, 2017, the Notice of Removal was sent to the Civil District Court for the Parish of Orleans, State of Louisiana, and that written notice of filing of the Notice of Removal was served via certified mail, return receipt requested, upon the attorney of record for Plaintiffs.

                                                                             *s/ Erin E. Pelleteri*
                                                                             ERIN E. PELLETERI

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on November 20, 2017, the foregoing Notice of Removal was served on counsel for Plaintiff via Certified Mail, Return Receipt Requested, pursuant to the Federal Rules of Civil Procedure.

James A. Watkins, Esq.
Capitelli & Wicker
1100 Poydras Street, Suite 2950
New Orleans, LA 70163

                                           *s/ Erin E. Pelleteri*
                                           ERIN E. PELLETERI