UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIKING CONSTRUCTION GROUP, LLC ET AL. | CIVIL ACTION |
| VERSUS | No. 17-12838 |
| SATTERFIELD & PONTIKES CONSTRUCTION GROUP INC. ET AL. | SECTION I |

### ORDER & REASONS

Before the Court is a motion[1] to remand and for costs, expenses, and sanctions filed by plaintiffs Viking Construction Group, LLC ("Viking"), Educational Electronics Corporation ("EEC"), Novo Communications, LLC ("Novo"), Hall Collums Construction, LLC ("HCC"), Perle Construction Group, LLC ("Perle"), and Tom Branighan, Inc. ("TBI"). For the following reasons, the motion is denied.

### I.

The claims asserted in this case are rooted in the Louisiana Racketeering Act ("Louisiana RICO"). Plaintiffs allege that defendants Satterfield & Pontikes, LLC ("S&P, LLC") and Satterfield and Pontikes, Inc. ("S&P, Inc.") (collectively "S&P") formed an enterprise for the purpose of securing federally funded construction projects in Orleans Parish by submitting bids that members of the enterprise knew would be low enough to guarantee awarding the contracts but insufficient to adequately and timely complete the work through subcontractors.[2] Plaintiffs assert

---

[1] R. Doc. No. 9.
[2] R. Doc. No. 1-1 ¶ 12.

that, after securing contracts, S&P would negotiate change orders so as to increase overall payments from the government while also defrauding subcontractors out of labor, materials, supplies, and funds.[3] Plaintiffs further contend that defendant CDW Services, LLC ("CDW") participated in this enterprise by conspiring with S&P and by filing a verified petition for summary proceeding in state court that purportedly contained materially false statements, the purpose of which was to remove a lien that had been filed by plaintiff Perle to recover for amounts owed on several unpaid invoices.[4]

Plaintiffs filed this lawsuit in state court on October 27, 2017.[5] Defendants filed a timely notice of removal on November 20, 2017, asserting diversity jurisdiction.[6] Plaintiffs then filed the present motion to remand on December 15, 2017, arguing that complete diversity does not exist.[7]

The parties do not dispute that diversity exists between all plaintiffs and both S&P defendants.[8] Plaintiffs insist, however, that diversity is destroyed by the presence of defendant CDW, whose member, Chris Walker, is a citizen of Louisiana.[9] The S&P defendants do not deny that CDW is a Louisiana citizen. Rather, they

---

[3] *Id.*
[4] *Id.* at ¶ 34.
[5] *Id.*
[6] R. Doc. No. 1.
[7] R. Doc. No. 9-1.
[8] *See id.*
[9] *Id.* at 4. For purposes of diversity jurisdiction, the citizenship of a LLC is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–80 (5th Cir. 2008).

2

maintain that CDW was improperly joined as a defendant and, as a result, its citizenship is irrelevant for purposes of diversity jurisdiction.[10]

Accordingly, the central question before the Court is whether CDW is a properly joined defendant. If it is, then complete diversity is lacking, and remand is required.[11] If it is not, then complete diversity exists, and remand would be inappropriate.[12]

## II.

When challenging the propriety of joinder, "[t]he removing party 'bears a heavy burden of proving that the joinder of the in-state party was improper . . . that is, to show that sham defendants were added to defeat jurisdiction." *Smallwood Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004). "Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* at 573.

A removing defendant may show improper joinder in one of two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting

---

[10] R. Doc. No. 15, at 3.
[11] *See* 28 U.S.C. § 1332.
[12] The Court notes, and plaintiffs do not contest, that the amount in controversy in this case appears to exceed the $75,000 amount necessary to establish diversity jurisdiction. Although plaintiffs do not assert a specific damages amount in their original petition, the injuries they cite relate to several multimillion dollar construction projects. Additionally, plaintiffs seek treble damages, costs, expenses, and attorney's fees.

3

*Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). As to the second method—the only one at issue here—the Fifth Circuit has held that the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* In determining the validity of an improper joinder claim, the Court does "not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005).

To assess a plaintiff's possibility of recovery against an in-state defendant, the Court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 574. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[13] *Id.* When conducting the 12(b)(6)-style inquiry, federal pleading standards apply. *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016). Further, the court "must evaluate all of the factual allegations in the light

---

[13] Alternatively, a court may, "in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d 568. However, this technique is reserved for the rare cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* This is no such case.

4

most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory*, 434 F.3d at 308 (quotations omitted).

### III.

The S&P defendants argue that defendant CDW, a Louisiana citizen, was improperly joined. Under the improper joinder doctrine described above, for CDW to be a properly joined defendant, there must be a reasonable basis for the Court to predict that plaintiffs might be able to recover against CDW. Plaintiffs' only claim against CDW sounds in racketeering. Therefore, the threshold issue is whether plaintiffs can establish a cause of action against CDW under Louisiana RICO.

### A.

To state a valid civil cause of action under Louisiana RICO, a party must show that (1) a person engaged in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[14] *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003). The term "pattern of racketeering activity" means

> engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurs after August 21, 1992, and that the last of such incidents occurs within five years after a prior incident of racketeering activity.

---

[14] "Because of the parallel between [federal] RICO and Louisiana's statutes, federal decisions in this area are persuasive." *State v. Touchet*, 759 So.2d 194, 197 (La. Ct. App. 3d Cir. 2000) (citing *State v. Nine Sav. Accounts*, 553 So.2d 823 (La. 1989)).

5

La. Rev. Stat. 15:1352(C). "Racketeering activity" means "committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime that is punishable under" one of 65 Louisiana criminal statutes. La. Rev. Stat. 15:1352(A)(1)–(65).

## B.

The S&P defendants assert that plaintiffs' Louisiana RICO claims against CDW cannot withstand a 12(b)(6)-type analysis, as they are time-barred.[15] Louisiana RICO is subject to a five-year prescriptive period. La.Rev.Stat. 15:1356(H); *Ames v. Ohle*, 97 So.3d 386, 391 (La. Ct. App. 4th Cir. 2012). "Prescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a cause of action." *Ames*, 97 So.3d at 394 (citing *Barbe v. Am. Sugar Refining, Inc.*, 83 So.3d 75, 83 (La. Ct. App. 4th Cir. 2011)). "Constructive knowledge of facts indicating a cause of action is whatever notice is enough to excite attention and put the injured party on guard and call for further inquiry." *Id.*

Similarly, the Fifth Circuit "has adopted an injury discovery rule, whereby a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury." *Joseph v. Bach & Wasserman, LLC*, 487 Fed. App'x 173, 176 (5th Cir. 2012) (internal quotations omitted). "It is discovery of the injury, and not other elements of a RICO claim, that starts the limitations period running." *Id.* (citing *Rotella v. Wood*, 528 U.S. 549, 556 (2000)). This "injury discovery" rule applies to Louisiana RICO claims. *See Farmer v. D&O Contractors, Inc.*, 640 Fed. App'x 302, 304 n.3 (5th

---

[15] R. Doc. No. 15, at 6–9.

6

Cir. 2016) (per curiam) ("Both [the federal and Louisiana RICO] limitations periods begin to run when a plaintiff has knowledge or constructive knowledge of the injury giving rise to a cause of action.").

Plaintiffs filed their state court petition on October 27, 2017. Therefore, any claims regarding injuries arising prior to October 27, 2012 about which plaintiffs had actual or constructive knowledge are prescribed. The Court notes that plaintiffs do not argue that any sort of tolling applies to their claims. Indeed, they have failed entirely to respond to S&P's arguments regarding prescription. *See* R. Doc. No. 9-1.

The *only* allegation of racketeering activity against CDW relates to a construction project at the Jackson Barracks.[16] According to plaintiffs' petition, S&P received a contract and provided $7.3 million of bonds for the project. The contract and bonds were then filed into the mortgage records of the Parish of Orleans. Soon after, S&P subcontracted a portion of the work required for the project to CDW, who in turn entered into an oral agreement with plaintiff Perle to assist with the project. Ultimately, plaintiffs allege, CDW failed to pay some of Perle's invoices, leading Perle to file a lien in the mortgage records.

Subsequently, CDW filed a verified petition for summary proceeding in the Civil District Court for the Parish of Orleans in order to remove the lien filed by Perle. This petition allegedly contained materially false statements—namely, that CDW never had any subcontract or contract of any kind with Perle and that Perle had never been a subcontractor or otherwise provided labor for CDW on the project.

---

[16] R. Doc. No. 1-1 ¶ ¶ 15–37.

Additionally, an S&P representative evidently testified on behalf of CDW at a hearing on the petition.

Plaintiffs allege that CDW's formerly filed state court petition constitutes racketeering activity, as it is a false public record filed in violation of Louisiana Revised Statute 14:133.[17] Yet, even assuming this filing constitutes racketeering activity for Louisiana RICO purposes, CDW's petition was filed on March 22, 2011, well outside the five-year statute of limitations. Further, plaintiff Perle—the only plaintiff effected by CDW's petition—clearly knew of the injury that resulted from the petition and the legal proceedings surrounding it. Indeed, as part of those proceedings, Perle filed a reconventional demand for concursus and damages in the Civil District Court for the Parish of Orleans on May 12, 2011, a demand that included virtually identical allegations to the ones Perle alleges here.[18] Any claims against CDW are, therefore, prescribed on their face.

Accordingly, the Court concludes that plaintiffs are unable to establish a cause of action against CDW under Louisiana RICO. Consequently, CDW was improperly

---

[17] R. Doc. No. 9-1, at 6. Louisiana Revised Statute 14:133 prohibits the filing or maintaining of false public records and is included as one of the 65 crimes considered to be racketeering activity. La. Rev. Stat. 15:1352(A)(38).

[18] A copy of Perle's demand is included in the record as an exhibit to S&P's separate motion to dismiss. R. Doc. No. 12-3. As the Fifth Circuit has recognized, "a court may [generally] only look to the complaint, any documents attached to the complaint, and any documents attached to the motion . . . that are central to the claim and referenced by the complaint" when conducting a 12(b)(6) analysis. *Joseph*, 487 Fed. App'x at 178 n.3. "However, the court may take judicial notice of matters of public record. Here, the document referenced is a pleading filed with a Louisiana state district court, and it is a matter of public record." *Id.*

joined as a defendant in this case, and its Louisiana citizenship does not preclude diversity jurisdiction. Remand is, therefore, unwarranted.[19]

## C.

For the same reasons that remand is inappropriate, it is appropriate to dismiss plaintiff's claims against CDW. *See, e.g., Ayala v. Gabriel Bldg. Supply*, No. 12-577, 2012 WL 1579496 (E.D. La. May 4, 2012) (Milazzo, J.) (finding improper joinder, denying motion to remand, and dismissing improperly joined defendant without prejudice), *aff'd Ayala v. Enerco Grp., Inc.*, 569 Fed. App'x 241 (5th Cir. 2014); *see also Williams v. Syngenta Corp.*, No. 15-644, 2016 WL 807762, at *10 (M.D. La. Feb. 3, 2016) (Bourgeois, M.J.) ("[T]his court and other courts within the Fifth Circuit have summarily dismissed improperly joined defendants.") (collecting cases).

## IV.

Finally, plaintiffs seek payment of costs and expenses, including attorney's fees, associated with their motion to remand.[20] Plaintiffs also move for sanctions pursuant to Rule 11 of Federal Rules of Civil Procedure.[21] Because the Court finds that CDW was improperly joined and that removal was, therefore, appropriate, plaintiffs are not entitled to costs or expenses.[22]

---

[19] Because the Court concludes that plaintiffs' claims against CDW are prescribed, it need not address S&P's other arguments regarding plaintiffs' failure to plead a cause of action under Louisiana RICO.
[20] R. Doc. No. 9-1, at 8.
[21] Plaintiffs submitted a "Memorandum in Support of Motion to Remand and for Sanctions and Costs," which references Rule 11. *Id.* at 1.
[22] *See* 28 U.S.C. § 1447(c).

9

Likewise, plaintiffs' request for sanctions is misplaced. After all, defendants properly and successfully removed their case. Not to mention, plaintiffs have failed to comply with the clear dictates of Rule 11, which plainly require that any motion for sanctions "must be made separately from any other motion," "must describe the specific conduct that allegedly violates" the rule, "must be served" on the non-moving party, and "must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Plaintiffs do not appear to have fulfilled any of these basic requirements.

The Court further observes that all motions, including those for costs, expenses, and sanctions, typically present stronger arguments when they manage to identify the proper parties to a case and avoid references to extraneous legal concepts. In support of its request for expenses and costs, plaintiffs' motion states that "because the basis for seeking supplemental jurisdiction has been so thoroughly rejected by the Courts of this district, plaintiff submits that Lafayette should be cast with costs, including attorney's fees."[23] To the Court's knowledge, however, there is no party by the name of "Lafayette" involved in this case, nor has any party asserted a "basis for seeking supplemental jurisdiction." It appears to the Court that this portion of plaintiffs' motion may have been adapted from briefing in a different case, one involving separate parties and distinct issues of law. The Court offers no opinion on the prudence of such a practice. It notes, however, that should counsel feel the need

---

[23] R. Doc. No. 9-1, at 8.

to cut and paste feebly briefed arguments from one motion to the next, counsel should, at the very least, ensure that such arguments are accurate and relevant to the case at hand.

V.

For the foregoing reasons,

**IT IS ORDERED** that the plaintiffs' motion to remand and for costs, expenses, and sanctions is **DENIED** and that all claims asserted against CDW in the above-captioned matter are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, January 12, 2018.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**