UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIKING CONSTRUCTION GROUP, LLC ET AL. | CIVIL ACTION |
| VERSUS | No. 17-12838 |
| SATTERFIELD & PONTIKES CONSTRUCTION GROUP INC. ET AL. | SECTION I |

## ORDER & REASONS

Before the Court is an uncontested motion[1] to dismiss filed by defendants Satterfield & Pontikes, LLC ("S&P, LLC") and Satterfield and Pontikes, Inc. ("S&P, Inc.) (collectively "S&P"). For the following reasons, the motion is granted.

### I.

The claims asserted in this case are rooted in the Louisiana Racketeering Act ("Louisiana RICO"). Plaintiffs allege that S&P formed an enterprise for the purpose of securing federally funded construction projects in Orleans Parish by submitting bids that members of the enterprise knew would be low enough to guarantee awarding of the contracts but insufficient to adequately and timely complete the work through subcontractors.[2] Plaintiffs assert that, after securing contracts, S&P would

---

[1] R. Doc. No. 12. S&P filed its motion on December 19, 2017 and set it for submission on January 10, 2018. Accordingly, plaintiffs' response was due on January 2, 2018. *See* Local Rule 7.5. To date, no response has been filed, and no extension has been sought. Therefore, the Court may properly assume that plaintiffs have no opposition to S&P's motion. *Johnson v. Colvin*, 2014 WL 4186790, *1 n.2 (Aug. 22, 2014) (Zainey, J.). Further, the Court may grant S&P's unopposed, dispositive motion so long as it has merit. *See Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001); *John v. State of La.*, 757 F.2d 698 (5th Cir. 1985).

[2] R. Doc. No. 1-1 ¶ 12.

negotiate change orders so as to increase overall payments from the government while also defrauding subcontractors out of labor, materials, supplies, and funds.[3] Plaintiffs further contend that defendant CDW Services, LLC ("CDW") participated in this enterprise by conspiring with S&P and by filing materially false public records.[4]

Plaintiffs filed this lawsuit in state court on October 27, 2017.[5] Defendants filed a timely notice of removal on November 20, 2017, asserting diversity jurisdiction.[6] Plaintiffs then filed a motion to remand on December 15, 2017, arguing that complete diversity does not exist.[7] On December 19, 2017, S&P filed the instant motion to dismiss, arguing that plaintiffs fail to state a claim upon which relief can be granted.[8] On January 12, 2018, the Court denied plaintiffs' motion to remand and dismissed all claims against defendant CDW. The Court now turns to S&P's motion to dismiss, to which plaintiffs have not responded.

---

[3] *Id.*
[4] *Id.* at ¶ 34.
[5] *Id.*
[6] R. Doc. No. 1.
[7] R. Doc. No. 9-1.
[8] R. Doc. No. 12.

2

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permit a district court to dismiss a complaint, or any part of it, when a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Where "the complaint 'on its face show[s] a bar to relief,'" then dismissal is the appropriate course. *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## III.

### A.

To state a valid civil claim under Louisiana RICO, a party must show that (1) a person engaged in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[9] *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003). The term "pattern of racketeering activity" means

> engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurs after August 21, 1992, and that the last of such incidents occurs within five years after a prior incident of racketeering activity.

La. Rev. Stat. 15:1352(C). "Racketeering activity" means "committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime that is punishable under" one of 65 specified Louisiana criminal statutes. La. Rev. Stat. 15:1352(A)(1)–(65).

### B.

S&P argues that plaintiffs have failed to state a claim upon which relief can be granted, as all of plaintiffs' Louisiana RICO claims are time-barred. Louisiana RICO is subject to a five-year prescriptive period. La.Rev.Stat. § 15:1356(H); *Ames v. Ohle*,

---

[9] "Because of the parallel between [federal] RICO and Louisiana's [RICO] statute[], federal decisions in this area are persuasive." *State v. Touchet*, 759 So.2d 194, 197 (La. Ct. App. 3d Cir. 2000) (citing *State v. Nine Sav. Accounts*, 553 So.2d 823 (La. 1989)).

4

97 So.3d 386, 391 (La. Ct. App. 4th Cir. 2012). "Prescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a cause of action." *Ames*, 97 So.3d at 394 (citing *Barbe v. Am. Sugar Refining, Inc.*, 83 So.3d 75, 83 (La. Ct. App. 4th Cir. 2011)). "Constructive knowledge of facts indicating a cause of action is whatever notice is enough to excite attention and put the injured party on guard and call for further inquiry." *Id.* Likewise, the Fifth Circuit "has adopted an 'injury discovery rule,' whereby 'a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury.'" *Joseph v. Bach & Wasserman*, 487 Fed. App'x 173, 176. "It is discovery of the injury, and not other elements of a RICO claim, that starts the limitations period running." *Id.* (citing *Rotella v. Wood*, 528 U.S. 549, 556 (2000)). This injury discovery rule applies to Louisiana RICO claims. *See Farmer v. D&O Contractors, Inc.*, 640 Fed. App'x 302, 304 n.3 (5th Cir. 2016) ("Both [the federal and Louisiana RICO] limitations periods begin to run when a plaintiff has knowledge or constructive knowledge of the injury giving rise to a cause of action.").

Further, "consistent with, and based on, the 'injury discovery' rule," racketeering claims involving a string of separate injuries are subject to a "separate accrual" rule. *Love v. Nat'l Med. Enter.*, 230 F.3d 765, 775 (5th Cir. 2000). This rule "allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury." *Id.* at 773. Accordingly, when a RICO claim involves alleged racketeering activity that occurred both inside and outside the

5

limitations period, recovery is allowed "for injury caused by the commission of a separable, new predicate act within the limitations period." *Id.*

Under the separate accrual rule, however, a plaintiff is not permitted to "use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id.* (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997)). Stated another way, a plaintiff may only recover for racketeering injuries discovered or discoverable within the limitations period. *See Jaso v. Coca Cola Co.*, 435 Fed. App'x 346, 355 (5th Cir. 2011) (holding, in a case involving alleged racketeering activity spanning from 1994 to 2010, that even if plaintiff knew of RICO injuries in 1994, he could still recover for injuries caused by racketeering activity that took place within the limitations period); *see also Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995) ("As long as separate and independent injuries continue to flow from the underlying RICO violations— regardless of when those violations occurred—plaintiff may wait indefinitely to sue, but may then win compensation only for injuries discovered or discoverable within [the limitations period], together, of course, with any provable future damages.").

Plaintiffs filed their state court petition on October 27, 2017. Therefore, any claims regarding injuries arising before October 27, 2012 about which plaintiffs had actual or constructive knowledge are prescribed.

Plaintiffs' state court petition alleges that the defendants' RICO enterprise began on November 5, 2009 and ended on October 30, 2012.[10] All of plaintiffs' alleged

---

[10] R. Doc. No. 1-1 ¶ 13.

6

injuries, however, were sustained long before October 27, 2012, and plaintiffs had actual or constructive knowledge of those injuries prior to that time.

i.

Plaintiff Perle's injury dates back to 2011.[11] According to plaintiffs' state court petition, S&P received a construction contract and provided $7.3 million in bonds for the project. The contract and bonds were then filed into the mortgage records of the Parish of Orleans. Soon after, S&P subcontracted a portion of the work required on the project to CDW, who in turn subcontracted with plaintiff Perle. Ultimately, plaintiffs allege, CDW failed to pay some of Perle's invoices, leading Perle to file a lien in the mortgage records.

Subsequently, CDW filed a verified petition for summary proceeding in the Civil District Court for the Parish of Orleans in order to remove the lien filed by Perle. This petition allegedly contained materially false statements—namely, that CDW never had any subcontract or contract of any kind with Perle and that Perle had never been a subcontractor or otherwise provided labor for CDW on the project. Additionally, an S&P representative evidently testified on behalf of CDW at a hearing on the petition.

Plaintiffs allege that CDW's petition constitutes racketeering activity, as it is a false public record filed in violation of Louisiana Revised Statute 14:133.[12] Yet, even assuming this filing constitutes racketeering activity for Louisiana RICO

---

[11] *Id.* ¶¶ 15–37.
[12] R. Doc. No. 9-1, at 6.

purposes, CDW's petition was filed on March 22, 2011, well outside the five-year prescriptive period. Further, plaintiff Perle obviously knew of the injury that resulted from the petition and the legal proceedings surrounding it. Indeed, as part of those proceedings, Perle filed a reconventional demand for concursus and damages in the Civil District Court for the Parish of Orleans on May 12, 2011, a demand that included virtually identical allegations to the ones alleged here.

### ii.

Similarly, plaintiff Hall Collums Construction's ("HCC") stated injury occurred in early 2010.[13] HCC claims that it had an agreement with S&P to provide work on a Jackson Barracks project. HCC evidently began work on site demolition on March 16, 2010. It worked for "several weeks" before submitting a payment request to S&P. The only injury HCC asserts occurred in 2010, when it was supposedly not paid the amount it was owed. HCC was clearly aware of this injury, as it had submitted an invoice for services rendered and billed, an invoice S&P allegedly refused to pay. Additionally, HCC hired legal counsel, who eventually managed to obtain for HCC an "unconditional tender of half of what was owed."[14]

### iii.

With respect to plaintiff Viking, the pertinent injury appears to have occurred on July 25, 2012, when an attorney for S&P allegedly threatened to report Viking's owner for federal payroll fraud, somehow preventing him from testifying and

---

[13] R. Doc. No. 1-1 ¶¶ 38–56.
[14] *Id.* ¶ 55.

8

"presenting his claim" in an arbitration proceeding.[15] Viking further claims that S&P ultimately did report Viking for payroll fraud. Viking fails to specify exactly what type of injury it suffered at the hands of S&P or how any of S&P's conduct with respect to it constitutes racketeering activity. In any event, however, S&P's conduct took place outside the prescriptive period, and Viking knew of any injuries S&P's conduct may have caused it at that time. Indeed, Viking's owner, in light of the July 2012 threat, refrained from testifying in the arbitration proceeding, and Viking apparently retained counsel to defend against the payroll fraud charge.

### iv.

Finally, plaintiffs Educational Electronics Corporation ("EEC"), Novo Communications, LLC ("Novo"), and Tom Branighan, Inc. ("TBI") trace their injuries back to a project at L.B. Landry High School.[16] In connection with that project, EEC was contracted by TBI to install special systems. EEC installed the fire alarm, intercom, gymnasium, and cafeteria sound systems; security camera systems; and data, television, and phone wiring. EEC hired Novo to assist with the data, television, and phone components of this work. S&P was the general contractor on the project and allegedly "forced" a quality control representative on the subcontractors, over the objections of TBI and EEC. S&P purportedly threatened to "back charge EEC, TBI, and Novo a substantial amount at [its] discretion if they didn't shut up and pay" the quality control representative. EEC, TBI, and Novo do not specify exactly how this

---

[15] *Id.* ¶¶ 61–66.
[16] *Id.* ¶¶ 67–76.

9

conduct harmed them. Nevertheless, they were aware of any injury the conduct may have caused. Not only did they "report[]" the "scheme" in a 2011 state court lawsuit, but EEC notified the Federal Bureau of Investigation of the allegations "months prior."

v.

In each of the aforementioned instances, the ostensibly injured plaintiffs knew or should have known of their injuries prior to October 27, 2012.[17] Hence,

---

[17] Plaintiffs' lengthy state court petition identifies only a single instance of alleged racketeering activity that took place after October 27, 2012. The petition states that on October 30, 2012, S&P, LLC filed a "Plan of Short Form Merger" with the Louisiana Secretary of State representing that S&P, LLC was to become a wholly owned subsidiary of S&P, Inc. Plaintiffs contend that this action constitutes the filing of a false public record in violation of Louisiana Revised Statute 14:133. The filing is false, plaintiffs claim, because the relevant documents were signed by George Pontikes ("Pontikes"), who, having previously transferred his membership interest in S&P, LLC, did not have authority to enter into the merger.

Under the injury discovery rule and the corollary separate accrual rule, this purportedly defective merger is the only relevant conduct for which plaintiffs could possibly recover. Indeed, it is the only racketeering activity alleged to have occurred within five years of the plaintiffs bringing suit, and the only activity that could have injured the plaintiffs within that prescriptive period. Yet plaintiffs have failed to identify, and the Court cannot discern, any injury attributable to the merger.

Even assuming that the documents signed by Pontikes and filed by S&P suffice to establish a criminal violation for filing false public records, plaintiffs do not allege any facts that show how the filing has damaged them in any way. Rather, as S&P argues, it appears that "[p]laintiffs are relying upon the merger (which in no way affected them) to salvage their right to pursue wholly unrelated claims . . ." This they cannot do. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (A RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."); *see also Landry v. Airline Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1260–61 (5th Cir. 1990) ("[T]he acts of sabotage are not actionable because the pilots did not allege or show that they sustained any injury as a result.").

plaintiffs' Louisiana RICO claims are prescribed and must be dismissed.[18]

Accordingly,

**IT IS ORDERED** that S&P's motion to dismiss is **GRANTED** and that all claims asserted against S&P in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, January 12, 2018.

                                                                            _____
                                                                            **LANCE M. AFRICK
                                                                            UNITED STATES DISTRICT JUDGE**

---

[18] Because the Court concludes that all of plaintiffs' claims are prescribed, it need not address S&P's other arguments regarding plaintiffs' substantive failure to plead a cause of action under Louisiana RICO.